# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### MARTINSBURG

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**                        **CRIMINAL ACTION NO. 3:11-CR-38-001 and 002**
                                    **(Bailey)**

**LARRY EUGENE PRESGRAVES, JR.,**
**and MARTINSBURG MOTOR SPORTS**
**SALES, INC.,**

    **Defendants.**

## ORDER DENYING DEFENDANTS MARTINSBURG MOTOR SPORTS SALES, INC.'S AND LARRY EUGENE PRESGRAVES, JR.'S, MOTIONS TO DISMISS

Pending before this Court are defendant Martinsburg Motor Sports Sales, Inc.'s Motion to Dismiss [Doc. 13], which was filed on September 9, 2011, and defendant Larry Eugene Presgraves, Jr.'s, Motion to Dismiss [Doc. 14], which was filed on September 10, 2011. In his Response in Support of the Motion to Dismiss of Martinsburg Motor Sports Sales, Inc. [Doc. 14], Mr. Presgraves adopted some of the arguments presented in Martinsburg Motor Sports Sales, Inc.'s Motion to Dismiss. On September 13, 2011, the Government filed an Opposition to Defendants' Motions to Dismiss [Doc. 15]. Having been fully briefed, the motions are now ripe for disposition. This Court, having reviewed the motions, finds that the Defendants' Motions to Dismiss [Docs. 13 and 14] should be **DENIED** for the reasons stated below.

1

## Factual and Procedural Background

Martinsburg Motor Sports Sales, Inc. has "owned and operated a motorcycle and ATV sales, service[,] and parts business" since 1999. ([Doc. 13] at 1). Larry Presgraves is a former manager of Martinsburg Motor Sports Sales, Inc. (*Id.*). In July 2007, the government filed a civil complaint for forfeiture against Martinsburg Motor Sports Sales, Inc.'s bank account. In that civil action, the government alleged that Mr. Presgraves and Martinsburg Motor Sports Sales, Inc. structured cash deposits totaling $104,850 from October 2006 to March 2007 and seized funds totaling this amount from Martinsburg Motor Sports Sales, Inc. ([Doc. 13] at 2). A settlement agreement was reached, in which $20,000 was returned to Martinsburg Motor Sports Sales, Inc. (*Id.*). Martinsburg Motor Sports Sales, Inc. admitted no wrongdoing in this settlement agreement. (*Id.*).

On July 19, 2011, Larry Eugene Presgraves, Jr., was charged with "knowingly and willfully . . . mak[ing] a materially false, fictitious, and fraudulent statement and representation" in violation of 18 U.S.C. § 1001(a)(2) with regard to deposits totaling $318,690. ([Doc. 1] at 1). The indictment also contained charges against Mr. Presgraves and Martinsburg Motor Sports Sales, Inc. for allegedly structuring financial transactions from July 2006 to June 2007 to evade the reporting requirements of 31 U.S.C. § 5313(a). ([Doc. 1] at 2). The government is seeking forfeiture of any real or personal property involved in the alleged offenses or traceable to a violation of 31 U.S.C. § 5324. ([Doc. 1] at 3).

## Applicable Law

Financial institutions generally must report each transaction involving more than $10,000. 31 U.S.C. § 5313(a) and 31 C.F.R. § 1010.311. It is illegal to structure financial

transactions to avoid this reporting requirement. 31 U.S.C. § 5324(a)(3).[1] In addition, under Section 1001(a)(2), it is unlawful to knowingly and willfully "mak[e] any materially false, fictitious, or fraudulent statement or representation" in a matter within the jurisdiction of the United States government. 18 U.S.C. § 1001(a)(2).

## Discussion

Pursuant to Federal Rule of Criminal Procedure 12(b), the defendants have moved to dismiss counts of the indictment with which they allege there is a defect. FED. RULE CRIM. P. 12(b)(3)(B). In its Motion to Dismiss, Martinsburg Motor Sports Sales, Inc. ("MMS") presents six arguments to support its motion. First, MMS argues that the Section 5324 is void because it is unconstitutionally vague. ([Doc. 13] at 3-11). Second, MMS states that the specific structuring charges against MMS and Mr. Presgraves are void for vagueness. ([Doc. 13] at 11). Third, MMS argues that counts two through ten of the indictment are multiplicitous. ([Doc. 13] at 11-14). Fourth, MMS states that count seven fails to state an offense. ([Doc. 13] at 14). Fifth, MMS argues that the forfeiture sought by the government violates the Excessive Fines Clause of the Eighth Amendment. ([Doc. 13] at 14-15). Finally, MMS argues that the indictment should be dismissed based upon the settlement agreement. ([Doc. 13] at 15-16). Defendant Mr. Presgraves joins in MMS's first four arguments. ([Doc. 14] at 1-2).

---

[1] 31 U.S.C. § 5324 provides that "[n]o person shall, for the purpose of evading the reporting requirements of [S]ection 5313(a) . . . structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions."

### 1. MMS and Mr. Presgraves' Argument that Section 5324 is Unconstitutionally Vague in Violation of the Due Process Clause of the Fifth Amendment

If a statute is "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits" it violates the Due Process Clause of the Fifth Amendment. ***Giaccio v. Pennsylvania***, 382 U.S. 399, 402 (1966); *see also* ***United States v. Williams***, 553 U.S. 285, 304 (2008). The United States Supreme Court has stated that a statute will generally be found to be void-for-vagueness if it fails to meet two requirements. ***Kolender v. Lawson***, 461 U.S. 352, 357 (1983) (*relying on* ***Connally v. General Construction Co.***, 269 U.S. 385 (1926); ***Village of Hoffman Estates v. Flipside***, 455 U.S. 489 (1982)). First, the statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited . . . ." (*Id.*). Second, that statute must "not encourage arbitrary and discriminatory enforcement." (*Id.*).

MMS and Mr. Presgraves argue that Section 5324 is vague based upon the usage of the term "transaction." ([Doc. 13] at 9 and [Doc. 14] at 5-7). Defendants rely upon the definition for the word "transaction" provided in Black's Law Dictionary, stating that it "consist[s] of an act or agreement or several acts or agreements." ([Doc. 13] at 8-9). The defendants argue that the confusion as to whether one act or a series of acts constitutes a transaction means that a person of reasonable intelligence could not determine whether deposits were a violation of the law. (*Id.* at 9). In addition, the defendants imply that the government has discretion in how to interpret the statute and to divide the monies at issue in structuring transactions. (*Id.* at 13).

The government responds that the Sixth Circuit Court of Appeals has ruled that

4

"[t]he use of the term 'transaction' within the statute does not render the statute unconstitutionally vague." ([Doc. 15] at 2, *quoting* **United States v. Pierce**, 920 F.2d 934, *4 (6th Cir. 1990)(unpublished). In its holding, the Sixth Circuit relied upon the definition for the term "transaction in currency" provided in 31 C.F.R. § 103.11(o),[2] which prior to the date of the defendant's crime, defined the term as a "transaction involving the physical transfer of currency from one person to another." (*Id.* at 4). The Sixth Circuit found that there is nothing vague about the use of the word "transaction," particularly if the defendant participated in conduct that is "clearly proscribed" by the statute. (*Id.*). In a case involving structuring charges, the United States Supreme Court defined the phrase "structure a transaction" as "to break up a single transaction above the reporting threshold into two or more separate transactions. . . ." **Ratzlaf v. United States**, 510 U.S. 135, 136 (1994). This case did not include any definition of the word "transaction," further supporting the argument that there is no ambiguity as to its meaning under the statute. See *id.*

Following the Sixth Circuit's reasoning, this Court finds that the use of the word "transaction" in Section 5324 does not render the statute unconstitutionally vague. First, the statute clearly proscribes banking activity that is intended to evade the reporting requirement under Section 5313(a). *See* 31 U.S.C. § 5324. Therefore, a person of average intelligence is capable of understanding that structuring deposits to evade the reporting requirement is illegal conduct under the statute. Second, the government is not given discretion as to how to enforce the statute because it must group the transactions based upon the "purpose of evading the reporting requirements" language in the statute.

---

[2]The definition for this term is now found at 31 C.F.R. § 1010.100(bbb)(2).

5

(*See id.*). Because the statute meets these two requirements, this Court finds that it is not void-for-vagueness. (See ***Kolender***, 461 U.S. at 357). Therefore, this Court denies the defendants' motions to dismiss the indictment on the basis that the statute is unconstitutionally vague.

### 2. MMS and Mr. Presgraves' Argument that the Specific Structuring Charges Against MMS and Mr. Presgraves are Void-for-Vagueness

Similar to their first argument, the defendants argue that the specific structuring charges against MMS and Mr. Presgraves are void-for-vagueness, thereby necessitating the dismissal of counts two through ten. The defendants argue that Section 5324 lacks "explicit standards" because it "fails to meaningfully define what constitutes a 'transaction' that triggers the illegal conduct prohibited." ([Doc. 14] at 6-7; [Doc. 13] at 8-11). The government responds that the "deposits alleged in the indictment will be proven to be structured based on the availability of separate sources of funds for MMS to deposit." ([Doc. 15] at 2-3).

As discussed above, the use of the word "transaction" without a definition does not render the statute unconstitutionally vague. Therefore, it is not void-for-vagueness as it is applied to the defendants in this case. This Court denies the defendants' motions to dismiss the indictment as unconstitutionally vague.

### 3. MMS and Mr. Presgraves' Argument that Counts Two Through Ten are Multiplicitous

When a single offense is charged under several counts, the indictment is multiplicitous. ***United States v. Burns***, 990 F.2d 1426, 1438 (4th Cir. 1993)

(*quoting* Charles A. Wright, *Federal Practice and Procedure* § 142). "[A] series of repeated acts [that] are charged as separate crimes [that] the defendant claims . . . are part of a continuous transaction and[,] therefore[,] a single crime" is another form of possible multiplicty. **United States v. Allen**, 13 F.3d 105, 107 (4th Cir. 1993)(*quoting* 2 Wayne R. LaFave & Jerold H. Isreal, *Criminal Procedure* § 19.2(e), at 457-58 & n.121 (1984)). The concern in multiplicitous indictments is that "the defendant may be given multiple sentences for the same offense." (*Id.*). As such, the test for multiplicity involves the statutory interpretation of what constitutes an offense. (Charles A. Wright, *Federal Practice and Procedure* § 142, at 13 (Fourth Edition)). In determining whether the indictment is multiplicitous, a court must look at the allegations in the indictment, not evidence that is presented. (*Id.* at supplement 2).

MMS and Mr. Presgraves argue that the source of funds involved in the various transaction "was the same[; therefore,] the government cannot charge separate counts of structuring for each deposit or deposits made during a given time frame." ([Doc. 13] at 14; *see also* [Doc. 14] at 5). The government contends that, as a retail business, MMS "acquired new sources of funds over the period of time covered by the indictment" and that "each period [of time] is the base of a separate structuring offense." ([Doc. 15] at 3).

MMS and Mr. Presgraves rely upon holdings from the Second, Seventh, and Tenth Circuit Courts of Appeals to support the argument that the source of the funds "determin[es] the allowable unit of prosecution." ([Doc. 13] at 12-13, relying upon **United States v. Handakas**, 286 F.3d 92 (2nd Cir. 2002), overruled on other grounds by **United States v. Rybicki**, 354 F.3d 124 (2nd Cir. 2003); **United States v. Davenport**, 929 F.2d 1169, 1171

(7th Cir. 1991); and **United States v. Nail**, 949 F.2d 301, 308 (10th Cir. 1991)). The government does not counter the premise that the source of funds is relevant to the structuring charges; however, the government disagrees with the defendants as to how to define the source of the funds. (*See* [Doc. 15] at 3). In the motions to dismiss, the defendants appear to view business revenue as a single source of the funds available for deposit. ([Doc. 14] at 4-5; [Doc. 13] at 13-14). However, the government states that the business acquired new sources of funds over time during the course of its retail activity. ([Doc. 15] at 3).

The Seventh Circuit Court of Appeals has ruled that "the structuring itself, and not the individual deposit, is the unit of crime." **Davenport**, 929 F.2d at 1172. In response to this ruling, the Fourth Circuit Court of Appeals stated that "[t]here are sound reasons supporting the principle that the government should refrain from bringing a separate structuring count for each deposit, especially in cases involving numerous deposits over an extended period of time." **United States v. Peterson**, 607 F.3d 975, 981 (4th Cir. 2010) (*relying on* **United States v. Tran Trong Cuong**, 18 F.3d 1132, 1142 (4th Cir. 1994). This language supports the Seventh Circuit's holding that each count should pertain to one incident of structuring, not necessarily one deposit.

The government has clearly not attempted to charge each deposit as a separate count. *(See* [Doc. 1]). Each deposit at issue in this case is not listed under a separate count. Furthermore, the government has stated that it will prove at trial that "each count is based upon a separate source of funds." ([Doc. 15] at 3). Although the Court does not look at evidence presented to determine whether an indictment contains multiplicitous

8

claims, this statement by the government supports the information present in the indictment that each count contains one charge of structuring deposits. As such, this Court finds no reason to hold at this point in the proceeding that counts two through ten are multiplicitous; therefore, the defendants' motions to dismiss these counts of the indictment as multiplicitous is denied.

4. MMS and Mr. Presgraves' Argument that Count Seven Fails to State an Offense

MMS and Mr. Presgraves argue that count seven of the indictment fails to state an offense because it entails a single deposit that is less than $10,000. ([Doc. 13] at 14 and [Doc. 14] at 7-8, respectively). The government responds that "when the source of the funds available was more than $10,000 and the deposit was structured to fall below the $10,000 threshold," a single deposit can be subject to the structuring statute. ([Doc. 15] at 3, *relying on* 31 C.F.R. § 1010.100(xx)).[3]

An indictment is considered to be sufficient when (1) it "contains the elements of the offense intended to be charged" and (2) "the record shows with accuracy to what extent he

---

[3]31 C.F.R. § 1010.100(xx) provides the following:

For purposes of § 1010.314, a person structures a transaction if that person . . . conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under §§ 1010.311, 1010.313, 10120.315, 1021.311 and 1021.313 of this chapter. "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

9

may plead a former acquittal or conviction" in the event that "other proceedings are taken against him for a similar offense . . . ." **Russell v. United States**, 369 U.S. 749, 763-64 (1962) (*citing* **Cochran and Sayre v. United States**, 157 U.S. 286, 290 (1895); **Rosen v. United States**, 161 U.S. 29, 34 (1896); and **Hagner v. United States**, 285 U.S. 427, 431 (1932)). In this case, the indictment alleges that the defendants, Mr. Presgraves and MMS, structured various currency deposits so that they would fall below the $10,000 reporting requirement for the purpose of evading that requirement. ([Doc. 1] at 2). This information contains the elements of the charges, thereby meeting the first requirement. The second requirement of a sufficient indictment is met with the list of dates and deposit amounts under each count; with this information, the defendant is put on notice as to which deposits are being prosecuted by the government under this indictment.

In particular, count seven of the indictment lists one deposit for $9,000 on March 19, 2007. ([Doc. 1] at 2.) Under the statute, "[t]he transaction or transactions need not exceed the $10,000 reporting threshold . . . to constitute structuring . . . ." 30 C.F.R. § 1010.100(xx). As such, a count alleging a structuring charge for one deposit that is less than $10,000 does not fail to state an offense simply because it contains a single deposit and totals less than $10,000. Therefore, count seven of the indictment against Mr. Presgraves and MMS does not fail to state an offense and does not require dismissal by this Court; as such, the defendants' motions to dismiss this count of the indictment is denied.

### 5. MMS's Argument that the Forfeiture Sought by the Government Violates the Excessive Fines Clause of the Eighth Amendment

MMS argues that the forfeiture that the government is seeking in this case violates the Eighth Amendment. ([Doc. 13] at 14-15). The United States Supreme Court has ruled that a forfeiture of property in a criminal proceeding can be a fine to which Eighth Amendment analysis applies. **United States v. Bajakajian**, 524 U.S. 321, 328 (1998). In **Bajakajian**, the Court adopted a gross disproportionality standard to review the amount of forfeiture at issue under the Eighth Amendment excessive fines analysis. 524 U.S. at 336. However, this standard is utilized after the sentence has been imposed. (See e.g., *id.* generally). Furthermore, Section 5317 directs that the "court in imposing sentence for any violation of [S]ection 5313 . . . shall order the defendant to forfeit all property, real or personal, involved in the offense and . . . traceable thereto." 31 U.S.C. § 5317(c)(1)(A). Therefore, the mere possibility of a forfeiture at the sentencing phase of a proceeding does not necessitate a motion to dismiss at this stage of the proceeding. In this case, no forfeiture has been imposed against MMS; therefore, this argument is not yet ripe, and the defendant's motion to dismiss the indictment on this basis is denied.

### 6. MMS's Argument that the Indictment Should be Dismissed Based on the Settlement Agreement

In support of this argument, MMS states that the settlement agreement from the civil forfeiture case pertains to some of the same transactions at issue in this proceeding. ([Doc. 13] at 16). MMS argues that the government is "attempting to prosecute MMS

based on funds that it previously agreed would not be the subject of further prosecution of any kind." (*Id.*). In its Opposition to Defendants' Motions to Dismiss, the government responds that the settlement agreement did not preclude the government from filing a criminal action.

Although MMS has some concerns with the amount of any possible forfeiture, those concerns do not warrant a dismissal of the proceeding. In the event that a forfeiture is imposed on MMS, the government has stated that it "agrees that MMS will be entitled to a credit of up to $104,850 against the forfeiture flowing from the overlapping civil/criminal structuring periods." ([Doc. 15] at 4). However, in the event that a forfeiture is imposed, the issue as to the amount of credit that would be granted to MMS pursuant to the settlement agreement does not have any bearing on the defendant's motion to dismiss; therefore, it will not be addressed in any further detail in this Order.

The relevant language at issue in the settlement agreement states that "[t]he entry of the forfeiture judgment will prejudice the right of the government with respect to the $20,000" being returned to MMS; however, it "will not prejudice the right of the United States to initiate any criminal . . . proceeding against or involving [MMS], or any other property that [MMS] may have an interest in." ([Doc. 13 Attachment 1] at 1). The settlement agreement clearly states that the government may pursue criminal charges against MMS. (*Id.*). Therefore, it neither bars this proceeding nor supports a dismissal of this action. As such, the defendant's motion to dismiss the indictment based upon the settlement agreement is denied.

## Conclusion

For the foregoing reasons, defendant Martinsburg Motor Sports Sales, Inc.'s Motion

to Dismiss **[Doc. 13]** and defendant Larry Eugene Presgraves, Jr.'s, Motion to Dismiss **[Doc. 14]** are hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: October 5, 2011.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE